## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| CHRISTOPHER ZOIDIS, et al., | ) | |
| | ) | |
| *Plaintiffs*, | ) | Civil Action No. MJG-16-2786 |
| | ) | |
| v. | ) | |
| | ) | |
| T. ROWE PRICE ASSOCIATES, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

## ANSWER AND AFFIRMATIVE DEFENSES TO THE COMPLAINT

Defendant T. Rowe Price Associates, Inc. ("T. Rowe Price") hereby answers Plaintiffs' complaint (the "Complaint") and asserts affirmative defenses as follows. Except as otherwise expressly admitted, T. Rowe Price denies each and every allegation in paragraphs 1 through 310 of the Complaint, including, without limitation, the headings, subheadings, tabular illustrations, footnotes, and exhibits contained in the Complaint. To the extent that any additional response is required to the allegations, headings, or unnumbered paragraphs in the Complaint, T. Rowe Price denies all allegations contained therein. T. Rowe Price expressly reserves the right to amend and/or supplement this Answer.

## OVERVIEW OF ACTION

1.     T. Rowe Price admits that Plaintiffs purport to bring this action against T. Rowe Price under Section 36(b) of the Investment Company Act of 1940 ("ICA"), 15 U.S.C. § 80a-35(b), on behalf of and for the benefit of the following funds: (i) T. Rowe Price Blue Chip Growth Fund (the "Blue Chip Growth Fund"); (ii) T. Rowe Price Capital Appreciation Fund (the "Capital Appreciation Fund"); (iii) T. Rowe Price Equity Income Fund (the "Equity Income Fund"); (iv) T. Rowe Price Growth Stock Fund (the "Growth Stock Fund"); (v) T. Rowe Price

International Stock Fund (the "International Stock Fund"); (vi) T. Rowe Price High Yield Fund (the "High Yield Fund"); (vii) T. Rowe Price New Income Fund (the "New Income Fund"); and (viii) the T. Rowe Price Small Cap Stock Fund (the "Small Cap Fund") (collectively, the "Funds").

2.      T. Rowe Price admits that it serves as the sponsor and investment adviser to the Funds.  T. Rowe Price further admits that, pursuant to Investment Management Agreements ("IMAs") with each individual Fund, it receives a management fee at the annual rate set forth in the fee schedule included in Paragraph 3 of each IMA as compensation for investment management and advisory services furnished to each Fund.

3.      The allegation of Paragraph 3 states a legal conclusion to which no answer is required.

4.      T. Rowe Price denies the allegations of Paragraph 4.

5.      T. Rowe Price denies the allegations of Paragraph 5.

6.      T. Rowe Price denies the allegations of Paragraph 6.

7.      T. Rowe Price denies the allegations of Paragraph 7.

8.      T. Rowe Price admits that the aggregate contractual advisory fees for the Funds for the 2015 fiscal year were more than $1.0 billion.  T. Rowe Price denies the remaining allegations in Paragraph 8 in the form and manner alleged, except T. Rowe Price states that the allegations concerning the percentage difference between the Funds' advisory fees for fiscal year 2008 and fiscal year 2015 consist of mathematical calculations that speak for themselves.

9.      T. Rowe Price denies the allegations of Paragraph 9.

10.     T. Rowe Price denies the allegations of Paragraph 10.

11.     T. Rowe Price admits that Plaintiffs purport to bring this action for the purposes claimed in Paragraph 11, but denies the remaining allegations of Paragraph 11 and specifically denies that the Funds are charged excessive and unlawful investment management fees in violation of Section 36(b) of the ICA.

## JURISDICTION AND VENUE

12.     The allegations of Paragraph 12 state a legal conclusion to which no answer is required.

13.     The allegations of Paragraph 13 state a legal conclusion to which no answer is required.

14.     T. Rowe Price admits it is a Maryland corporation with its principal office located at 100 East Pratt Street, Baltimore, Maryland 21202.  The remaining allegations of Paragraph 14 state legal conclusions to which no answer is required.

## PARTIES

15.     T. Rowe Price is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 and thus denies those allegations.

16.     T. Rowe Price is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16 and thus denies those allegations.

17.     T. Rowe Price is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 and thus denies those allegations.

18.     T. Rowe Price is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 and thus denies those allegations.

19.     T. Rowe Price is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 and thus denies those allegations.

20.     T. Rowe Price is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 and thus denies those allegations.

21.     T. Rowe Price is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and thus denies those allegations.

22.     T. Rowe Price admits that it is a corporation organized under the laws of the State of Maryland.  T. Rowe Price further admits that it is a wholly owned subsidiary of T. Rowe Price Group, Inc.

23.     T. Rowe Price admits that it maintains an office at 333 Bush Street, Suite 2250, San Francisco, California 94104.   The remaining allegation of Paragraph 23 states a legal conclusion to which no answer is required.

## THE FUNDS' ORGANIZATION AND OPERATIONS

24.     T. Rowe Price admits that, except for the International Stock Fund, each of the Funds is an open-end investment management company registered under the ICA.

25.     T. Rowe Price admits that the International Stock Fund is a series of T. Rowe Price International Fund, Inc.

26.     T. Rowe Price denies the allegations in Paragraph 26.  T. Rowe Prices states that as of the date of this Answer, the T. Rowe Price family of funds consists of 187 individual mutual funds which, in some instances, are series of 66 different corporations and trusts.

27.     T. Rowe Price admits that the Funds are investment vehicles made up of pools of assets, consisting primarily of portfolios of securities, which belong to the investors who own shares in the Funds.

28.     T. Rowe Price denies the allegations of paragraph 28 in the form and manner alleged.

29.     T. Rowe Price admits that management and operations of a mutual fund are typically externalized and contractually delegated to its investment adviser.  T. Rowe Price denies that the Funds have no officers or employees.  T. Rowe Price states that it provides highly qualified professionals satisfactory to the Funds' Board of Directors ("Board") to act as officers of the Funds.  T. Rowe Price admits that it provides the Funds with office space and resources reasonably necessary for the operation of the Funds.  T. Rowe Price further admits that the operations of the Funds are under the direction of the Board, which has delegated the day-to-day activities of the Funds to T. Rowe Price.  T. Rowe Price denies the remaining allegations of Paragraph 29.

30.     T. Rowe Price admits that it serves as the investment adviser to each of the Funds pursuant to IMAs and in that capacity is responsible for managing each Fund's individual portfolio of securities, in addition to a number of other services it provides to the Funds pursuant to the IMAs.

31.     T. Rowe Price admits that the Funds receive certain services from third-party and affiliated service providers, including custodian and transfer agency services, accounting, distribution, legal, and other services.  T. Rowe Price further admits that T. Rowe Price Services, Inc. serves as the Funds' transfer agent.  T. Rowe Price further states that T. Rowe Price Services, Inc. and T. Rowe Price are both subsidiaries of T. Rowe Price Group, Inc.  T. Rowe Price denies Plaintiffs' implication in the Complaint that the third-party service providers provide their respective services without collaboration, management, and oversight by T. Rowe Price.  T. Rowe Price denies the remaining allegations of Paragraph 31 in the form and manner alleged.

32.     T. Rowe Price admits that the operations of the Funds are under the direction of a Board of Directors.  T. Rowe Price states that as of the time the Complaint was filed, the Board consisted of thirteen directors, ten of whom are independent.   T. Rowe Price denies the remaining allegations of Paragraph 32 in the form and manner alleged.

33.     T. Rowe Price admits that the Board, among other things, oversees and reviews the management of, and services provided to, the Funds.  T. Rowe Price denies the remaining allegations of Paragraph 33 in the form and manner alleged.

**DEFENDANT'S INVESTMENT MANAGEMENT SERVICES TO THE FUNDS**

34.     T. Rowe Price admits that it provides wide-ranging investment management and advisory services to the Blue Chip Growth Fund pursuant to an IMA, dated April 22, 1993.  T. Rowe Price further admits that at the time the Complaint was filed, the IMA's most recent amendment was dated April 20, 2005.

35.     T. Rowe Price admits that it provides wide-ranging investment management and advisory services to the Capital Appreciation Fund pursuant to an IMA between T. Rowe Price and the Capital Appreciation Fund, dated April 24, 1997.  T. Rowe Price admits that at the time the Complaint was filed, the IMA's most recent amendment was dated August 1, 2004.

36.     T. Rowe Price admits that it provides wide-ranging investment management and advisory services to the Equity Income Fund pursuant to an IMA, dated May 1, 1987.  T. Rowe Price further admits that at the time the Complaint was filed, the IMA's most recent amendment was dated April 20, 2005.

37.     T. Rowe Price admits that it provides wide-ranging investment management and advisory services to the Growth Stock Fund pursuant to an IMA, dated May 1, 1991.  T. Rowe Price further admits that at the time the Complaint was filed, the IMA's most recent amendment was dated April 20, 2005.

38.     T. Rowe Price admits that it provides wide-ranging investment management and advisory services to the High Yield Fund pursuant to an IMA, dated July 1, 1987.  T. Rowe Price further admits that at the time the Complaint was filed, the IMA's most recent amendment was dated August 1, 2004.

39.     T. Rowe Price denies the allegations in Paragraph 39.  T. Rowe Price states that it provides wide-ranging investment management and advisory services to the International Stock Fund pursuant to an IMA between T. Rowe Price and the T. Rowe Price International Funds, Inc. dated December 31, 2010.

40.     T. Rowe Price admits that it provides wide-ranging investment management and advisory services to the New Income Fund pursuant to an IMA dated July 1, 1987.  T. Rowe Price further admits that at the time the Complaint was filed, the IMA's most recent amendment was dated August 1, 2004.

41.     T. Rowe Price admits that it provides wide-ranging investment management and advisory services to the Small Cap Fund pursuant to an IMA dated September 2, 1992.  T. Rowe Price further admits that at the time the Complaint was filed, the IMA's most recent amendment was dated August 1, 2004.

42.     T. Rowe Price denies the allegations in Paragraph 42.  T. Rowe Price further states that the documents referenced in Paragraph 42 are in writing and speak for themselves.

43.     T. Rowe Price states that the documents referenced in Paragraph 43 are in writing and speak for themselves.  T. Rowe Price denies any implication by Plaintiffs that the quoted portions of the documents are the only descriptions of T. Rowe Price's obligations as the Funds' investment adviser.

44.     T. Rowe Price states that the documents referenced in Paragraph 44 are in writing and speak for themselves.

45.     T. Rowe Price states that the documents referenced in Paragraph 45 are in writing and speak for themselves.

**Blue Chip Growth Fund**

46.     T. Rowe Price states that the document referenced in Paragraph 46 is in writing and speaks for itself.

47.     T. Rowe Price states that the document referenced in Paragraph 47 is in writing and speaks for itself.

48.     T. Rowe Price admits that Larry J. Puglia serves as Portfolio Manager and Chairman of the Investment Advisory Committee for the Blue Chip Growth Fund.  T. Rowe Price states that it employs an array of highly qualified personnel to provide the Fund a full range of investment management services.   T. Rowe Price denies the remaining allegations of Paragraph 48 in the form and manner alleged.

**Capital Appreciation Fund**

49.     T. Rowe Price states that the document referenced in Paragraph 49 is in writing and speaks for itself.

50.     T. Rowe Price states that the document referenced in Paragraph 50 is in writing and speaks for itself.

51.     T. Rowe Price admits that David R. Giroux serves as Portfolio Manager and Chairman of the Investment Advisory Committee for the Capital Appreciation Fund.  T. Rowe Price states that it employs an array of highly qualified personnel to provide the Fund a full range of investment management services.   T. Rowe Price denies the remaining allegations of Paragraph 51 in the form and manner alleged.

**Equity Income Fund**

52.     T. Rowe Price states that the document referenced in Paragraph 52 is in writing and speaks for itself.

53.     T. Rowe Price states that the document referenced in Paragraph 53 is in writing and speaks for itself.

54.     T. Rowe Price admits that John D. Linehan serves as Portfolio Manager and Chairman of the Investment Advisory Committee for the Equity Income Fund.  T. Rowe Price states that it employs an array of highly qualified personnel to provide the Fund a full range of investment management services.  T. Rowe Price denies the remaining allegations of Paragraph 54 in the form and manner alleged.

**Growth Stock Fund**

55.     T. Rowe Price states that the document referenced in Paragraph 55 is in writing and speaks for itself.

56.     T. Rowe Price states that the document referenced in Paragraph 56 is in writing and speaks for itself.

57.     T. Rowe Price admits that Joseph B. Fath serves as Portfolio Manager and Chairman of the Investment Advisory Committee for the Growth Stock Fund.  T. Rowe Price states that it employs an array of highly qualified personnel to provide the Fund a full range of investment management services.  T. Rowe Price denies the remaining allegations of Paragraph 57 in the form and manner alleged.

**High Yield Fund**

58.     T. Rowe Price states that the document referenced in Paragraph 58 is in writing and speaks for itself.

59.     T. Rowe Price states that the document referenced in Paragraph 59 is in writing and speaks for itself.

60.     T. Rowe Price admits that Mark J. Vaselkiv serves as Portfolio Manager and Chairman of the Investment Advisory Committee for the High Yield Fund.  T. Rowe Price states that it employs an array of highly qualified personnel to provide the Fund a full range of investment management services.  T. Rowe Price denies the remaining allegations of Paragraph 60 in the form and manner alleged.

**International Stock Fund**

61.     T. Rowe Price states that the document referenced in Paragraph 61 is in writing and speaks for itself.

62.     T. Rowe Price states that the document referenced in Paragraph 62 is in writing and speaks for itself.

63.     T. Rowe Price admits that Richard N. Clattenburg serves as Portfolio Manager and Chairman of the Investment Advisory Committee for the International Stock Fund.  T. Rowe Price states that it employs an array of highly qualified personnel to provide the Fund a full range of investment management services.   T. Rowe Price denies the remaining allegations of Paragraph 63 in the form and manner alleged.

**New Income Fund**

64.     T. Rowe Price states that the document referenced in Paragraph 64 is in writing and speaks for itself.

65.     T. Rowe Price states that the document referenced in Paragraph 65 is in writing and speaks for itself.

66.     T. Rowe Price admits that Daniel O. Shackelford serves as Portfolio Manager and Chairman of the Investment Advisory Committee for the New Income Fund.  T. Rowe Price

states that it employs an array of highly qualified personnel to provide the Fund a full range of investment management services.  T. Rowe Price denies the remaining allegations of Paragraph 66 in the form and manner alleged.

### Small Cap Fund

67.     T. Rowe Price states that the document referenced in Paragraph 67 is in writing and speaks for itself.

68.     T. Rowe Price states that the document referenced in Paragraph 68 is in writing and speaks for itself.

69.     T. Rowe Price denies the allegations of Paragraph 69 in the form and manner alleged.  T. Rowe Price states that, as of October 1, 2016, Frank Alonso serves as Portfolio Manager and Chairman of the Investment Advisory Committee for the Small Cap Fund.  T. Rowe Price states that it employs an array of highly qualified personnel to provide the Fund a full range of investment management services.

70.     The allegations of Paragraph 70 state legal conclusions to which no answer is required.

71.     T. Rowe Price admits that it provides the Funds, without limitation, administrative, compliance, legal, operational, accounting, tax, distribution, and other middle and back office services, as well as oversight of third-party service providers.  T. Rowe Price further admits that on top of day-to-day portfolio management, it bears the responsibility of ensuring compliance with regulatory and legal requirements.  T. Rowe Price denies the remaining allegations in Paragraph 71 in the form and manner alleged.

### INVESTMENT MANAGEMENT FEES CHARGED TO AND PAID BY THE FUNDS

72.     T. Rowe Price states that the documents referenced in Paragraph 72 are in writing and speak for themselves.

73.     T. Rowe Price admits that it employs the graduated group fee scale contained in Paragraph 73 but states that the applicable group fee rate is determined by the average daily net assets of the T. Rowe Price funds whose assets are included in the group fee schedule.  T. Rowe Price denies the remainder of Paragraph 73 in the form and manner alleged.

74.     T. Rowe Price denies the allegations of Paragraph 74 in the form and manner alleged.  T. Rowe Price states that each Fund's group fee is determined by applying the group fee rate to the Fund's average daily net assets.

75.     T. Rowe Price admits that as of December 31, 2015, the effective annual group fee rate was 0.29%.

76.     T. Rowe Price denies the allegations of Paragraph 76.  T. Rowe Price states that the individual fund fee is calculated as a percentage of each Fund's average daily net assets.

77.     T. Rowe Price denies the allegations in Paragraph 77 in the form and manner alleged.

78.     T. Rowe Price denies the allegations in Paragraph 78, except that T. Rowe Price states that the allegations concerning the effective management rates for the fiscal year 2015 consist of mathematical calculations that speak for themselves.

**DEFENDANT PROVIDES THE SAME OR SUBSTANTIALLY THE SAME INVESTMENT MANAGEMENT SERVICES TO SUBADVISED FUNDS**

79.     T. Rowe Price admits that it provides a narrow set of portfolio management services to mutual funds whose primary advisers contracted with T. Rowe Price to serve as a subadviser.  T. Rowe Price denies the remaining allegations in Paragraph 79 in the form and manner alleged.

80.     T. Rowe Price admits that it provides portfolio management services as subadviser to the VALIC Company I- Blue Chip Growth Fund (the "Valic Blue Chip Fund"), the

MassMutual Select Blue Chip Growth Fund (the "MassMutual Blue Chip Fund"), the MML Blue Chip Growth Fund (the "MML Blue Chip Fund"), the VY T. Rowe Price Capital Appreciation Portfolio (the "VY Capital Appreciation Portfolio"), the JNL/T. Rowe Price Capital Appreciation Fund (the "JNL Capital Appreciation Fund"), the Allianz Variable Insurance Products Trust- AZL T. Rowe Price Capital Appreciation Fund (the "AZL Capital Appreciation Fund"), the MainStay VP Funds Trust- Mainstay VP T. Rowe Price Equity Income Portfolio (the "Mainstay Equity Income Portfolio"), the VY(R) T .Rowe Price  Equity Income Portfolio (the "VY Equity Income Portfolio"), the Great West Funds, Inc.- Great West T. Rowe Price Equity Income Fund Portfolio (the "GW Equity Income Portfolio"), the MML Equity Income Fund, the Vantagepoint Funds- Equity Income Fund (the "Vantagepoint Equity Income Fund"), the EQ/T. Rowe Price Growth Stock Portfolio (the "EQ Growth Stock Portfolio"), the JNL/T. Rowe Price Established Growth Fund (the "JNL Growth Fund"), the LVIP T. Rowe Price Growth Stock Fund (the "LVIP Growth Stock Fund"), the  Metropolitan Series Fund- T. Rowe Price Large Cap Growth Portfolio (the "MSF Growth Portfolio"), the Optimum Fund Trust- Optimum Large Cap Growth Fund (the "Optimum Growth Fund"), the Penn Series Funds, Inc.- Penn Series Large Growth Stock Fund (the "Penn Growth Fund"), the Seasons Series Trust- Stock Portfolio (the "Seasons Stock Portfolio"), the Thrivent Series Fund, Inc.- Thrivent Partner Growth Stock Fund (the "Thrivent Growth Fund"), the VY T. Rowe Price Growth Equity Portfolio (the "VY Growth Portfolio), the Penn Series Fund – Penn Series High Yield Bond Fund (the "Penn High Yield Fund"), the Voya Investor Trust – VY T. Rowe Price International Stock Portfolio (the "VY International Stock Portfolio"), the John Hancock Variable Insurance Trust – New Income Trust (the "John Hancock New Income Trust"), and the Valic Co I- Small Cap Fund ("the Valic Small Cap Fund") (together, the "Subadvised Funds").

81.     T. Rowe Price admits that the AZL Capital Appreciation Fund is sponsored by Allianz Investment Management LLC ("Allianz"); the Optimum Growth Fund is sponsored by Delaware Management Company ("Delaware Management"); the VY Capital Appreciation Portfolio, the VY Equity Income Portfolio, the VY Growth Portfolio, and the VY International Stock Portfolio are sponsored by Directed Services LLC ("Directed Services"); the EQ Growth Stock Portfolio is sponsored by AXA Equitable Funds Management Group, LLC ("FMG"); the GW Equity Income Portfolio is sponsored by Great-West Capital Management LLC ("GW Capital Management"); the JNL Growth Fund and the JNL Capital Appreciation Fund are sponsored by Jackson National Asset Management LLC ("Jackson National"); the John Hancock New Income Trust is sponsored by John Hancock Investment Management Services LLC ("John Hancock"); the LVIP Growth Stock Fund is sponsored by Lincoln Investment Advisors Corporation ("LIA"); the MassMutual Blue Chip Fund, the MML Blue Chip Fund, and the MML Equity Income Fund are sponsored by MassMutual Life Insurance Company ("MassMutual"); the MSF Growth Portfolio is sponsored by MetLife Advisers LLC ("MetLife"); the MainStay Equity Income Portfolio is sponsored by New York Life Investment Management LLC ("NY Life"); the Penn Growth Fund and the Penn Series High Yield Fund are sponsored by Penn Mutual Asset Management ("Penn Mutual"); the Seasons Subadvised Stock Portfolio is sponsored by SunAmerica Asset Management, Inc. ("SunAmerica"); the Thrivent Growth Fund is sponsored by Thrivent Financial ("Thrivent"); the Valic Blue Chip Fund and the Valic Small Cap Fund are sponsored by Valic Company ("Valic"); and the Vantagepoint Equity Income Fund is sponsored by Vantagepoint Investment Advisors LLC ("Vantagepoint") (collectively, the "Sponsoring Advisers").

82.     T. Rowe Price admits that each Subadvised Fund is an open-end investment management company or series of such company registered under the ICA.

83.     T. Rowe Price states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83 and on that basis denies the allegations.

84.     T. Rowe Price states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 84 and on that basis denies the allegations.

85.     T. Rowe Price admits that it serves as a subadviser to the AZL Capital Appreciation Fund pursuant to a subadvisory agreement with Allianz.  T. Rowe Price admits that it serves as a subadviser to the Optimum Growth Fund pursuant to a subadvisory agreement with Delaware Management.  T. Rowe Price admits that it serves as a subadviser to the VY Capital Appreciation Portfolio, the VY Equity Income Portfolio, the VY Growth Portfolio, and the VY International Stock Portfolio pursuant to a subadvisory agreement with Directed Services.  T. Rowe Price admits that it serves as a subadviser to the EQ Growth Stock Portfolio pursuant to a subadvisory agreement with FMG.  T. Rowe Price admits that it serves as a subadviser to the GW Equity Income Portfolio pursuant to a subadvisory agreement with GW Capital Management.  T. Rowe Price further admits it serves as a subadviser to the JNL Growth Fund and the JNL Capital Appreciation Fund pursuant to two separate subadvisory agreements with Jackson National.  T. Rowe Price admits that it serves as a subadviser to the John Hancock New Income Trust pursuant to a subadvisory agreement with John Hancock.  T. Rowe Price admits that it serves as a subadviser to the LVIP Growth Fund pursuant to a subadvisory agreement with LIA.  T. Rowe Price admits that it serves as a subadviser to the MassMutual Blue Chip Fund, the

MML Blue Chip Fund, and the MML Equity Income Fund pursuant to three separate subadvisory agreements with MassMutual.  T. Rowe Price further admits that it serves as a subadviser to the MSF Growth Portfolio pursuant to a subadvisory agreement with MetLife.  T. Rowe Price admits that it serves as a subadviser to the MainStay Equity Income Portfolio pursuant to a subadvisory agreement with NY Life.  T. Rowe Price admits that it serves as a subadviser to the Penn Growth Fund and the Penn High Yield Fund pursuant to a subadvisory agreement with Penn Mutual.  T. Rowe Price admits that it serves as a subadviser to the Seasons Stock Portfolio pursuant to a subadvisory agreement with SunAmerica.  T. Rowe Price admits that it serves as a subadviser to the Thrivent Growth Fund pursuant to a subadvisory agreement with Thrivent.  T. Rowe Price admits that it serves as a subadviser to the Valic Blue Chip Fund and the Valic Small Cap Fund pursuant to a subadvisory agreement with Valic.  T. Rowe Price admits that it serves as a subadviser to the Vantagepoint Equity Income Fund pursuant to a subadvisory agreement with Vantagepoint.  T. Rowe Price denies the remaining allegations of Paragraph 85 in the form and manner alleged.

86.    T. Rowe Price admits that, pursuant to each subadvisory agreement, it receives a subadvisory fee from the Sponsoring Adviser for the subadvisory services rendered.  T. Rowe Price denies the remaining allegations of Paragraph 86.

87.    T. Rowe Price admits that, pursuant to each subadvisory agreement, it receives a subadvisory fee from the Sponsoring Adviser for the subadvisory services rendered.  T. Rowe Price denies the remaining allegations of Paragraph 87.

88.    T. Rowe Price denies the allegations of Paragraph 88.

89.    T. Rowe Price denies the allegations of Paragraph 89, except T. Rowe Price states that the documents referenced in Paragraph 89 are in writing and speak for themselves.

90.     T. Rowe Price states that the documents referenced in Paragraph 90 are in writing and speak for themselves.

**Subadvised Blue Chip Growth Funds**

91.     T. Rowe Price denies the allegations in Paragraph 91, except that T. Rowe Price states that the documents referenced in Paragraph 91 are in writing and speak for themselves.

92.     T. Rowe Price admits that Larry J. Puglia serves as Portfolio Manager for the Blue Chip Growth Fund and the VALIC Blue Chip Fund, MassMutual Blue Chip Fund, and MML Blue Chip Fund (the "Subadvised Blue Chip Growth Funds").  T. Rowe Price denies the remaining allegations of Paragraph 92 in the form and manner alleged.

93.     T. Rowe Price denies the allegations of Paragraph 93.

**Subadvised Capital Appreciation Funds**

94.     T. Rowe Price denies the allegations in Paragraph 94, except that T. Rowe Price states that the documents referenced in Paragraph 94 are in writing and speak for themselves.

95.     T. Rowe Price admits that David R. Giroux serves as Portfolio Manager for the Capital Appreciation Fund and the VY Capital Appreciation Portfolio, JNL Capital Appreciation Fund, and AZL Capital Appreciation Fund (the "Subadvised Capital Appreciation Funds").  T. Rowe Price denies the remaining allegations of Paragraph 95 in the form and manner alleged.

96.     T. Rowe Price denies the allegations of Paragraph 96.

**Subadvised Equity Income Funds**

97.     T. Rowe Price denies the allegations in Paragraph 97, except that T. Rowe Price states that the documents referenced in Paragraph 97 are in writing and speak for themselves.

98.     T. Rowe Price admits that John D. Linehan serves as Portfolio Manager for the Equity Income Fund and the MainStay Equity Income Portfolio, VY Equity Income Portfolio, GW Equity Income Portfolio, MML Subadvised Income Fund, and Vantagepoint Equity Income

Fund (the "Subadvised Equity Income Funds").  T. Rowe Price denies the remaining allegations of Paragraph 98 in the form and manner alleged.

99.     T. Rowe Price denies the allegations of Paragraph 99.

**Subadvised Growth Stock Funds**

100.     T. Rowe Price denies the allegations in Paragraph 100, except that T. Rowe Price states that the documents referenced in Paragraph 100 are in writing and speak for themselves.

101.     T. Rowe Price admits that Joseph B. Fath serves as Portfolio Manager for the Growth Stock Fund and the EQ Growth Stock Portfolio, JNL Growth Fund, LVIP Growth Stock Fund, MSF Growth Portfolio, Optimum Growth Fund, Penn Growth Fund, Seasons Stock Portfolio, Thrivent Growth Fund, and VY Growth Portfolio (the "Subadvised Growth Stock Funds").  T. Rowe Price denies the remaining allegations of Paragraph 101 in the form and manner alleged.

102.     T. Rowe Price denies the allegations of Paragraph 102.

**Subadvised High Yield Fund**

103.     T. Rowe Price denies the allegations in Paragraph 103, except that T. Rowe Price states that the documents referenced in Paragraph 103 are in writing and speak for themselves.

104.     T. Rowe Price admits that Mark J. Vaselkiv serves as Portfolio Manager for the High Yield Fund and the Penn High Yield Fund (the "Subadvised High Yield Fund").  T. Rowe Price denies the remaining allegations of Paragraph 104 in the form and manner alleged.

105.     T. Rowe Price denies the allegations of Paragraph 105.

**Subadvised International Stock Fund**

106.     T. Rowe Price denies the allegations in Paragraph 106, except that T. Rowe Price states that the documents referenced in Paragraph 106 are in writing and speak for themselves.

107.     T. Rowe Price admits that Richard N. Clattenburg serves as Portfolio Manager for the International Stock Fund and the VY International Stock Portfolio (the "Subadvised International Stock Fund").  T. Rowe Price denies the remaining allegations of Paragraph 107 in the form and manner alleged.

108.     T. Rowe Price denies the allegations of Paragraph 108.

**Subadvised New Income Fund**

109.     T. Rowe Price denies the allegations in Paragraph 109, except that T. Rowe Price states that the documents referenced in Paragraph 109 are in writing and speak for themselves.

110.     T. Rowe Price admits that Daniel O. Shackelford serves as Portfolio Manager for the New Income Fund and the John Hancock New Income Trust (the "Subadvised New Income Fund").  T. Rowe Price denies the remaining allegations of Paragraph 110 in the form and manner alleged.

111.     T. Rowe Price denies the allegations of Paragraph 111.

**Subadvised Small Cap Fund**

112.     T. Rowe Price denies the allegations in Paragraph 112, except that T. Rowe Price states that the documents referenced in Paragraph 112 are in writing and speak for themselves.

113.     T. Rowe Price admits that as of October 1, 2016, Frank M. Alonso serves as Portfolio Manager for the Small Cap Fund and the Valic Small Cap Fund (the "Subadvised Small Cap Fund").  T. Rowe Price denies the remaining allegations of Paragraph 113 in the form and manner alleged.

114.     T. Rowe Price denies the allegations of Paragraph 114.

115.     The allegations of Paragraph 115 state legal conclusions to which no answer is required.

116.     T. Rowe Price denies the allegations of Paragraph 116.

## THE FUNDS PAY HIGHER FEES THAN THE SUBADVISED FUNDS FOR DEFENDANT'S INVESTMENT MANAGEMENT SERVICES

117.     T. Rowe Price denies the allegations of Paragraph 117.

### Blue Chip Growth Fund

118.     T. Rowe Price admits that at the time the Complaint was filed, T. Rowe Price received a subadvisory fee from each of the Subadvised Blue Chip Growth Funds based on the terms of the individual subadvisory agreements.  T. Rowe Price denies the remainder of the allegations of Paragraph 118 in the form and manner alleged, except that T. Rowe Price states that the allegations concerning the percentage differences between the Blue Chip Growth Fund's advisory fee and the Subadvised Blue Chip Growth Funds' subadvisory fees consist of mathematical calculations that speak for themselves.

119.     T. Rowe Price denies the allegations of Paragraph 119 in the form and manner alleged, except that T. Rowe Price states that the allegations concerning the fee calculations for the Blue Chip Growth Fund based on investment management fee rates charged to the Subadvised Blue Chip Growth Funds consist of mathematical calculations that speak for themselves.

### Capital Appreciation Fund

120.     T. Rowe Price admits that at the time the Complaint was filed T. Rowe Price received a subadvisory fee from each of the Subadvised Capital Appreciation Funds, based on the terms of the individual subadvisory agreements.  T. Rowe Price denies the remainder of the allegations of Paragraph 120, in the form and manner alleged, except that T. Rowe Price states that the allegations concerning the percentage differences between the Capital Appreciation Fund's advisory fee and the Subadvised Capital Appreciation Funds' subadvisory fees consist of mathematical calculations that speak for themselves.

121.    T. Rowe Price denies the allegations of Paragraph 121 in the form and manner alleged, except that T. Rowe Price states that the allegations concerning the fee calculations for the Capital Appreciation Fund based on investment management fee rates charged to the Subadvised Capital Appreciation Funds consist of mathematical calculations that speak for themselves.

**Equity Income Fund**

122.    T. Rowe Price admits that at the time the Complaint was filed T. Rowe Price received a subadvisory fee from each of the Subadvised Equity Income Funds, based on the terms of the individual subadvisory agreements.  T. Rowe Price denies the remainder of the allegations of Paragraph 122 in the form and manner alleged, except that T. Rowe Price states that the allegations concerning the percentage differences between the Equity Income Fund's advisory fee and the Subadvised Equity Income Funds' subadvisory fees consist of mathematical calculations that speak for themselves.

123.    T. Rowe Price denies the allegations of Paragraph 123 in the form and manner alleged, except that T. Rowe Price states that the allegations concerning the fee calculations for the Equity Income Fund based on investment management fee rates charged to the Subadvised Equity Income Funds consist of mathematical calculations that speak for themselves.

**Growth Stock Fund**

124.    T. Rowe Price admits that at the time the Complaint was filed, T. Rowe Price received a subadvisory fee from each of the Subadvised Growth Stock Funds based on the terms of the individual subadvisory agreements.  T. Rowe Price denies the remainder of the allegations of Paragraph 124 in the form and manner alleged, except that T. Rowe Price states that the allegations concerning the percentage differences between the Growth Stock Fund's advisory fee

and the Subadvised Growth Stock Funds' subadvisory fees consist of mathematical calculations that speak for themselves.

125.    T. Rowe Price denies the allegations of Paragraph 125 in the form and manner alleged, except that T. Rowe Price states that the allegations concerning the fee calculations for the Growth Stock Fund based on investment management fee rates charged to the Subadvised Growth Stock Funds consist of mathematical calculations that speak for themselves.

**High Yield Fund**

126.    T. Rowe Price admits that at the time the Complaint was filed, T. Rowe Price received a subadvisory fee from the Subadvised High Yield Fund based on the terms of the subadvisory agreement.  T. Rowe Price denies the remainder of the allegations of Paragraph 126 in the form and manner alleged, except that T. Rowe Price states that the allegations concerning the percentage difference between the High Yield Fund's advisory fee and the Subadvised High Yield Fund's subadvisory fee consist of a mathematical calculation that speaks for itself.

127.    T. Rowe Price denies the allegations of Paragraph 127 in the form and manner alleged, except that T. Rowe Price states that the allegations concerning the fee calculation for the High Yield Fund based on the investment management fee rate charged to the Subadvised High Yield Fund consists of a mathematical calculation that speaks for itself.

**International Stock Fund**

128.    T. Rowe Price admits that at the time the Complaint was filed, T. Rowe Price received a subadvisory fee from the Subadvised International Stock Fund based on the terms of the subadvisory agreement.  T. Rowe Price denies the remainder of the allegations of Paragraph 128 in the form and manner alleged, except that T. Rowe Price states that the allegations concerning the percentage difference between the International Stock Fund's advisory fee and

the Subadvised International Stock Fund's subadvisory fee consist of a mathematical calculation that speaks for itself.

129.    T. Rowe Price denies the allegations of Paragraph 129 in the form and manner alleged, except that T. Rowe Price states that the allegations concerning the fee calculation for the International Stock Fund based on the investment management fee rate charged to the Subadvised International Stock Fund consists of a mathematical calculation that speaks for itself.

**New Income Fund**

130.    T. Rowe Price admits that at the time the Complaint was filed, T. Rowe Price received a subadvisory fee from the Subadvised New Income Fund based on the terms of the subadvisory agreement.  T. Rowe Price denies the remainder of the allegations of Paragraph 130 in the form and manner alleged, except that T. Rowe Price states that the allegations concerning the percentage difference between the New Income Fund's advisory fee and the Subadvised New Income Fund's subadvisory fee consist of a mathematical calculation that speaks for itself.

131.    T. Rowe Price denies the allegations of Paragraph 131 in the form and manner alleged, except that T. Rowe Price states that the allegations concerning the fee calculation for the New Income Fund based on the investment management fee rate charged to the Subadvised New Income Fund consists of a mathematical calculation that speaks for itself.

**Small Cap Fund**

132.    T. Rowe Price admits that at the time the Complaint was filed, T. Rowe Price received a subadvisory fee from the Subadvised Small Cap Fund based on the terms of the subadvisory agreement.  T. Rowe Price denies the remainder of the allegations of Paragraph 132 in the form and manner alleged, except that T. Rowe Price states that the allegations concerning the percentage difference between the Small Cap Fund's advisory fee and the Subadvised Small Cap Fund's subadvisory fee consist of a mathematical calculation that speaks for itself.

133.     T. Rowe Price denies the allegations of Paragraph 133 in the form and manner alleged, except that T. Rowe Price states that the allegations concerning the fee calculation for the Small Cap Fund based on the investment management fee rate charged to the Subadvised Small Cap Fund consists of a mathematical calculation that speaks for itself.

## THE HIGHER FEES CHARGED TO THE FUNDS ARE NOT JUSTIFIED BY ADDITIONAL SERVICES PROVIDED TO THE FUNDS

134.     T. Rowe Price denies the allegations of Paragraph 134.

135.     T. Rowe Price states that the documents referenced in Paragraph 135 are in writing and speak for themselves.

136.     T. Rowe Price denies the allegations of Paragraph 136.

137.     T. Rowe Price denies the allegations of Paragraph 137, except that T. Rowe Price states that the allegations concerning the fee difference between the management fee rate charged to the Funds for investment advisory services and the subadvisory fee rate charged to the Subadvised Funds for subadvisory services consists of mathematical calculations that speak for themselves.

138.     T. Rowe Price denies the allegations of Paragraph 138.

139.     T. Rowe Price denies the allegations of Paragraph 139 in the form and manner alleged.

140.     T. Rowe Price states that the documents referenced in Paragraph 140 are in writing and speak for themselves.

141.     T. Rowe Price states that the documents referenced in Paragraph 141 are in writing and speak for themselves.

142.     T. Rowe Price states that the documents referenced in Paragraph 142 are in writing and speak for themselves.

143.    T. Rowe Price admits that at the time the Complaint was filed, T. Rowe Price and the Funds had entered into a Transfer Agency and Service Agreement with T. Rowe Price Services, Inc., dated January 1, 2016 (the "TRP Transfer Agency Agreement").  T. Rowe Price further states that T. Rowe Price Services, Inc. and T. Rowe Price are both subsidiaries of T. Rowe Price Group, Inc.

144.    T. Rowe Price states that the document referenced in Paragraph 144 is in writing and speaks for itself.

145.    T. Rowe Price admits that, pursuant to Section C of the TRP Transfer Agency Agreement, each of the Funds pays "such fees and expenses as mutually agreed upon by the parties."  T. Rowe Price further states that the allocation of expenses between each of the individual Funds and T. Rowe Price is addressed in Section 2 of the IMAs, which speak for themselves.  T. Rowe Price denies the remaining allegations of Paragraph 145 in the form and manner alleged.

146.    T. Rowe Price denies the allegations of Paragraph 146 in the form and manner alleged.

**DEFENDANT REALIZED ECONOMIES OF SCALE AS THE FUNDS' AUM INCREASED**

147.    T. Rowe Price admits that the Blue Chip Growth Fund's AUM increased between December 31, 2008 and the end of fiscal year 2015.  T. Rowe Price states that as of December 31, 2008, the Blue Chip Growth Fund's investments in securities, at value, were approximately $7,533,671,000, and the Blue Chip Growth Fund's total assets were approximately $7,262,656,000.  T. Rowe Price admits that the Blue Chip Growth Fund's AUM was more than $31.3 billion as of December 31, 2015: its investments in securities, at value, were approximately $31,392,167,000, and its total assets were approximately $31,567,452,000.  T.

Rowe Price admits that the Blue Chip Growth Fund's AUM was approximately $28.9 billion as of February 29, 2016.

148.    T. Rowe Price denies that the investment management fees paid by the Blue Chip Growth Fund were less than $64.7 million in fiscal year 2008, and states that the investment management fees paid for fiscal year 2008 were approximately $64,712,000.  T. Rowe Price denies that the investment management fees paid by the Blue Chip Growth Fund were more than $165.9 million in fiscal year 2015 and states that the management fees paid for fiscal year 2015 were approximately $165,888,000.  T. Rowe Price states that the percentage increase between the Blue Chip Growth Fund's advisory fees for the fiscal years ending 2008 and 2015 consists of a mathematical calculation that speaks for itself.

149.    T. Rowe Price admits that the Capital Appreciation Fund's AUM increased between the end of fiscal year 2008 and the end of fiscal year 2015.  T. Rowe Price denies that the Capital Appreciation Fund's AUM was less than $7 billion as of the end of fiscal year 2008. T. Rowe Price states that as the investments in securities, at value, were approximately $7,026,405,000, and the Capital Appreciation Fund's total assets were approximately $7,115,769,000 as of the end of fiscal year 2008.  T. Rowe Price admits that the Capital Appreciation Fund's AUM was more than $24 billion at the end of fiscal year 2015: its investments in securities, at value, were approximately $24,332,561,000, and its total assets were approximately $24,547,253,000.  T. Rowe Price admits that the Capital Appreciation Fund's AUM was approximately $23.8 billion as of February 29, 2016.

150.    T. Rowe Price denies that the investment management fees paid by the Capital Appreciation Fund were less than $54.7 million as of the end of fiscal year 2008, and states that the investment management fees paid for fiscal year 2008 were approximately $55,950,000.  T.

Rowe Price admits that the investment management fees paid by the Capital Appreciation Fund were over $141.5 million in fiscal year 2015, and states that the management fees paid were approximately $141,909,000.   T. Rowe Price states that the percentage increase between the Capital Appreciation Fund's advisory fees for the fiscal years ending 2008 and 2015 consists of a mathematical calculation that speaks for itself.

151.    T. Rowe Price admits that the Equity Income Fund's AUM increased between the end of fiscal year 2008 and the end of fiscal year 2015.   T. Rowe Price denies that the Equity Income Fund's AUM was less than $14 billion as of the end of fiscal year 2008.   T. Rowe Price states that as of the end of fiscal year 2008, the Equity Income Fund's investments in securities, at value, were approximately $14,046,155,000, and that the Equity Income Fund's total assets were approximately $14,109,155,000.   T. Rowe Price admits that as of the end of fiscal year 2015, the Equity Income Fund's investments in securities, at value were approximately $22,840,386,000 and states that its total assets were approximately $23,013,641,000.   T. Rowe Price admits that the Equity Income Fund's AUM was approximately $20.9 billion as of February 29, 2016.

152.    T. Rowe Price denies that the Equity Income Fund's investment management fees paid by the Equity Income Fund were less than $104.9 million in fiscal year 2008, and states that the investment management fees paid for fiscal year 2008 were approximately $105,615,000.   T. Rowe Price admits that the Equity Income Fund's investment management fees were more than $139.4 million in fiscal year 2015, and states that the investment management fees paid were approximately $140,603,000.   T. Rowe Price states that the percentage increase between the Equity Income Fund's advisory fees for the fiscal years ending 2008 and 2015 consists of a mathematical calculation that speaks for itself.

153.    T. Rowe Price admits that the Growth Stock Fund's AUM increased between the end of fiscal year 2008 and the end of fiscal year 2015.  T. Rowe Price states that as of December 31, 2008, the Growth Stock Fund's investments in securities, at value, were approximately $14,791,288,000, and the Growth Stock Fund's total assets were approximately $14,868,437,000.  T. Rowe Price denies that the Growth Stock Fund's AUM was less than $14.8 billion as of December 31, 2008.  T. Rowe Price admits that as of December 31, 2015, the Growth Fund's investments in securities, at value, were approximately $45,547,739,000, and its total assets were approximately $45,321,399,000.  T. Rowe Price admits that the Growth Stock Fund's AUM was approximately $41.6 billion as of February 29, 2016.

154.    T. Rowe Price denies that the Growth Stock Fund's investment management fees paid by the Growth Stock Fund were less than $118.1 million in fiscal year 2008, and states that the investment management fees paid for fiscal year 2008 were approximately $118,143,000.  T. Rowe Price admits that the Growth Stock Fund's investment management fees were approximately $233,803,000 in fiscal year 2015.  T. Rowe Price states that the percentage increase between the Growth Stock Fund's advisory fees for the fiscal years ending 2008 and 2015 consists of a mathematical calculation that speaks for itself.

155.    T. Rowe Price admits that the High Yield Fund's AUM increased between May 31, 2008 and the end of fiscal year 2015.  T. Rowe Price denies that the High Yield Fund's AUM was less than $5.4 billion as of May 31, 2008.  T. Rowe Price states that as of May 31, 2008, the High Yield Fund's investments in securities, at value, were approximately $5,421,789,000, and the High Yield Fund's total assets were approximately $5,602,094,000.  T. Rowe Price admits that as of May 31, 2015, the High Yield Fund's AUM was more than $10.4 billion.  T. Rowe Price states that as of May 31, 2015, its investments in securities, at value, were approximately

$10,419,759,000 and its total assets were approximately $10,638,050,000.  T. Rowe Price admits that the High Yield Fund's AUM was approximately $8.8 billion as of February 29, 2016.

156.    T. Rowe Price admits that the High Yield Fund's investment management fees paid by the High Yield Fund were less than $31.1million in fiscal year 2008, and states that the investment management fees paid for fiscal year 2008 were approximately $31,095,000.  T. Rowe Price admits that the High Yield Fund's investment management fees were more than $58 million in fiscal year 2015, and states that the investment management fees paid were approximately $58,235,000.  T. Rowe Price states that the percentage increase between the High Yield Fund's advisory fees for the fiscal years ending 2008 and 2015 consists of a mathematical calculation that speaks for itself.

157.    T. Rowe Price admits that the International Stock Fund's AUM increased between October 31, 2008 and the end of fiscal year 2015.  T. Rowe Price denies that the International Stock Fund's AUM was less than $3.9 billion as of October 31, 2008.  T. Rowe Price states that as of October 31, 2008, the International Stock Fund's investments in securities, at value, were approximately $4,294,252,000, and its total assets were approximately $4,409,300,000.  T. Rowe Price admits that the International Stock Fund's AUM was more than $14.1 billion as of May 31, 2015.  T. Rowe Price admits that the International Stock Fund's AUM was approximately $13.1 billion as of February 29, 2016.

158.    T. Rowe Price admits that the International Stock Fund's investment management fees paid by the International Stock Fund were less than $41.5 million in fiscal year 2008, and states that the investment management fees paid were approximately $41,493,000.  T. Rowe Price admits that the International Stock Fund's investment management fees were more than $90.1 million in fiscal year 2015, and states that the investment management fees paid were

approximately $90,186,000.  T. Rowe Price states that the percentage increase between the International Stock Fund's advisory fees for the fiscal years ending 2008 and 2015 consists of a mathematical calculation that speaks for itself.

159.    T. Rowe Price admits that the New Income Fund's AUM increased between May 31, 2008 and the end of fiscal year 2015.  T. Rowe Price denies that the New Income Fund's AUM was less than $8.1 billion as of May 31, 2008.  T. Rowe Price states that as of May 31, 2008, the New Income Fund's investments in securities, at value, were approximately $9,175,000,000, and the New Income Fund's total assets were approximately $9,296,875,000. T. Rowe Price admits that the New Income Fund's AUM was more than $29 billion as of May 31, 2015, and states that its investments in securities, at value, were approximately $31,480,293,000 and its total assets were approximately $32,314,418,000.  T. Rowe Price admits that the New Income Fund's AUM was approximately $27.1 billion as of February 29, 2016.

160.    T. Rowe Price denies that the New Income Fund's investment management fees paid by the New Income Fund were less than $32.3 million in fiscal year 2008, and states that the investment management fees paid for fiscal year 2008 were approximately $32,498,000.  T. Rowe Price admits that the New Income Fund's investment management fees were more than $116.5 million in fiscal year 2015, and states that the investment management fees paid were approximately $120,420,000.  T. Rowe Price states that the percentage increase between the New Income Fund's advisory fees for the fiscal years ending 2008 and 2015 consists of a mathematical calculation that speaks for itself.

161.    T. Rowe Price admits that the Small Cap Fund's AUM increased between the end of fiscal year 2008 and the end of fiscal year 2015.  T. Rowe Price states that as of December 31, 2008, the Small Cap Fund's investments in securities, at value, were approximately

$3,788,550,000, and the Small Cap Fund's total assets were approximately $3,815,120,000.  T. Rowe Price admits that the Small Cap Fund's AUM was more than $8.3 billion as of December 31, 2015, and states that its investments in securities, at value, were approximately $8,357,488,000 and its total assets were approximately $8,419,488,000.  T. Rowe Price admits that the Small Cap Fund's AUM was approximately $7.7 billion as of February 29, 2016.

162.    T. Rowe Price denies that the Small Cap Fund's investment management fees paid by the Small Cap Fund were less than $39.7 million in fiscal year 2008, and states that the investment management fees paid for fiscal year 2008 were approximately $39,706,000.  T. Rowe Price admits that the Small Cap Fund's investment management fees were more than $67.1 million in fiscal year 2015, and states that the investment management fees paid were approximately $67,139,000.   T. Rowe Price states that the percentage increase between the Growth Stock Fund's advisory fees for the fiscal years ending 2008 and 2015 consists of a mathematical calculation that speaks for itself.

163.    T. Rowe Price denies the allegations of Paragraph 163.

164.    T. Rowe Price denies the allegations of Paragraph 164.

## DEFENDANT HAS NOT ADEQUATELY SHARED THE BENEFITS OF ECONOMIES OF SCALE WITH THE FUNDS

165.    T. Rowe Price denies the allegations of paragraph 165 in the form and manner alleged.

166.    T. Rowe Price admits the allegation of paragraph 166.

167.    T. Rowe Price denies the allegations of paragraph 167 in the form and manner alleged.

168.    T. Rowe Price admits that at the time the Complaint was filed, the fee schedule used to calculate the group fee component of each Fund's management fee included breakpoints.

T. Rowe Price denies that the Funds have not benefited from economies of scale (to the extent there have been economies of scale).   T. Rowe Price denies the remaining allegations of Paragraph 168 in the form and manner alleged.

169.   T. Rowe Price admits that at the time the Complaint was filed, the final breakpoint in the group fee schedule took effect when the sum of the aggregate net assets of the T. Rowe Price Funds reached $500 billion.   T. Rowe Price denies the remaining allegations of Paragraph 169 in the form and manner alleged.

170.   T. Rowe Price denies the allegations of Paragraph 170.

171.   T. Rowe Price denies the allegations of Paragraph 171.

172.   T. Rowe Price denies the allegations of Paragraph 172.

173.   T. Rowe Price denies the allegations of Paragraph 173.

174.   T. Rowe Price admits that after the sum of the aggregate net assets of the T. Rowe Price Funds exceeds $50 billion, each breakpoint reduces the group fee rate by half a basis point, or 0.0050%.   T. Rowe Price denies the remaining allegations of Paragraph 174 in the form and manner alleged.

175.   T. Rowe Price denies the allegations of Paragraph 175 in the form and manner alleged.

176.   T. Rowe Price denies the allegations of Paragraph 176.

177.   T. Rowe Price denies that the combined AUM of the Funds increased from $391 billion in 2009 to $763 billion in 2015.   T. Rowe Price states that the remaining allegation of Paragraph 177 consists of a mathematical calculation that speaks for itself.

178.   T. Rowe Price admits that the effective group fee rate charged to the T. Rowe Price Funds in 2009 was 30 basis points and that the effective group fee rate charged to the T.

Rowe Price Funds in 2015 was 29 basis points.  The remaining allegations of Paragraph 178 consist of a mathematical calculation that speaks for itself.

179.    T. Rowe Price admits that, as of the filing of this Answer, the individual fund fee rates for the Capital Appreciation Fund, the High Yield Fund, the International Stock Fund, and the Small Cap Fund do not include any breakpoints.  T. Rowe Price denies the remaining allegations of Paragraph 179 in the form and manner alleged.

180.    T. Rowe Price denies the allegations of Paragraph 180 in the form and manner alleged.

181.    T. Rowe Price denies the allegations of Paragraph 181.

182.    T. Rowe Price admits that at the end of fiscal year 2011, the Capital Appreciation Fund's investments in securities, at value, were approximately $11,220,630,000, and its total assets were approximately $11,297,397,000.  T. Rowe Price admits that at the end of fiscal year 2015, the Capital Appreciation Fund's investments in securities, at value, were approximately $24,332,561,000, and its total assets were approximately $24,547,253,000.  T. Rowe Price admits that from fiscal year 2011 through fiscal year 2015, the individual fund fee remained at 30 basis points.  T. Rowe Price admits that the effective annual group fee rate as of December 31, 2011 was 30 basis points and as of December 31, 2015 was 29 basis points.  T. Rowe Price states that the remaining allegations in Paragraph 182 consist of mathematical calculations that speak for themselves.

183.    T. Rowe Price states that the allegations of Paragraph 183 consist of mathematical calculations that speak for themselves.  T. Rowe Price denies the remaining allegations of Paragraph 183 in the form and manner alleged.

184.    T. Rowe Price admits that the Capital Appreciation Fund paid approximately $66,899,000 in investment management fees in fiscal year 2011.  T. Rowe Price admits that the Capital Appreciation Fund paid approximately $141,909,000 in fiscal year 2015.  T. Rowe Price states that the alleged increase in fees paid is a mathematical calculation that speaks for itself.  T. Rowe Price denies the remaining allegations of Paragraph 184 in the form and manner alleged.

185.    T. Rowe Price denies the allegations of Paragraph 185 in the form and manner alleged.

186.    T. Rowe Price admits that at the end of the fiscal year ending May 31, 2011, the High Yield Fund's investments in securities, at value, were approximately $8,523,164,000, and its total assets were approximately $8,803,051,000.  T. Rowe Price admits that at the end of the fiscal year ending May 31, 2015, the High Yield Fund's investments in securities, at value, were approximately $10,419,759,000, and its total assets were approximately $10,638,050,000.  T. Rowe Price admits that from fiscal year 2011 to fiscal year 2015, the individual fund fee remained at 30 basis points.  T. Rowe Price admits that the effective annual group fee rate as of December 31, 2011 was 30 basis points and as of December 31, 2015 was 29 basis points.  T. Rowe Price states that the remaining allegations in Paragraph 186 consist of mathematical calculations that speak for themselves.

187.    T. Rowe Price states that the allegations of Paragraph 187 consist of mathematical calculations that speak for themselves.  T. Rowe Price denies the remaining allegations of Paragraph 187 in the form and manner alleged.

188.    T. Rowe Price admits that the High Yield Fund paid approximately $48,512,000 in investment management fees in the fiscal year ending May 31, 2011.  T. Rowe Price admits that the High Yield Fund paid approximately $58,235,000 in investment management fees in the

fiscal year ending May 31, 2015.  The alleged increase in fees paid is a mathematical calculation that speaks for itself.  T. Rowe Price denies the remaining allegations of Paragraph 188 in the form and manner alleged.

189.    T. Rowe Price denies the allegations of Paragraph 189 in the form and manner alleged.

190.    T. Rowe Price admits that at the end of the fiscal year ending November 30, 2011, the International Stock Fund's investments in securities, at value, were approximately $7,192,559,000, and its total assets were approximately $7,321,316,000.  T. Rowe Price admits that as of the end of the fiscal year ending November 30, 2015, the High Yield Fund's investments in securities, at value, were approximately $14,135,349,000 and its total assets were approximately $14,498,762,000.  T. Rowe Price admits that from 2011 and fiscal year 2015, the individual fund fee remained at 35 basis points.  T. Rowe Price admits that the effective annual group fee rate as of December 31, 2011 was 30 basis points and as of December 31, 2015 was 29 basis points.  T. Rowe Price states that the remaining allegations in Paragraph 190 consist of mathematical calculations that speak for themselves.

191.    T. Rowe Price states that the allegations of Paragraph 191 consist of mathematical calculations that speak for themselves.  T. Rowe Price denies the remaining allegations of Paragraph 191 in the form and manner alleged.

192.    T. Rowe Price admits that the International Stock Fund paid approximately $43,889,000 in investment management fees in the fiscal year ending October 31, 2011.  T. Rowe Price admits that the International Stock Fund paid approximately $90,186,000 in 2015. The alleged increase in fees paid is a mathematical calculation that speaks for itself.  T. Rowe Price denies the remaining allegations of Paragraph 192 in the form and manner alleged.

193.    T. Rowe Price denies the allegations of Paragraph 193 in the form and manner alleged.

194.    T. Rowe Price admits that at the end of fiscal year 2011, the Small Cap Fund's investments in securities, at value, were approximately $6,635,671,000, and its total assets were approximately $6,664,040,000.  T. Rowe Price admits that as of the end of fiscal year 2015, the Small Cap Fund's investments in securities, at value, were approximately $8,357,488,000 and its total assets were approximately $8,419,488,000.  T. Rowe Price admits that from fiscal year 2011 to fiscal year 2015, the individual fund fee remained at 45 basis points.  T. Rowe Price admits that the effective annual group fee rate as of December 31, 2011 was 30 basis points and as of December 31, 2015 was 29 basis points.  T. Rowe Price states that the remaining allegations in Paragraph 194 consist of mathematical calculations that speak for themselves.

195.    T. Rowe Price states that the allegations of Paragraph 195 consist of mathematical calculations that speak for themselves.  T. Rowe Price denies the remaining allegations of Paragraph 195 in the form and manner alleged.

196.    T. Rowe Price admits that the Small Cap Fund paid approximately $52,293,000 in investment management fees in 2011.  T. Rowe Price admits that the Small Cap Fund paid approximately $67,139,000 in fees in 2015.  The alleged increase in fees paid is a mathematical calculation that speaks for itself.  T. Rowe Price denies the remaining allegations of Paragraph 196 in the form and manner alleged.

197.    T. Rowe Price denies the allegations of Paragraph 197 in the form and manner alleged.

198.    T. Rowe Price admits that the individual fund fee schedule for the Blue Chip Growth Fund, the Equity Income Fund, and the Growth Stock Fund each includes a breakpoint at

$15 billion in assets.  T. Rowe Price denies the remaining allegations of Paragraph 198 in the form and manner alleged.

199.    T. Rowe Price denies the allegations of Paragraph 199.

200.    T. Rowe Price denies the allegations of Paragraph 200.

201.    T. Rowe Price admits that the Blue Chip Growth Fund's investments in securities and total assets surpassed $15 billion during the fiscal year ended December 31, 2012, and that those figures have remained above $15 billion since December 31, 2012.

202.    T. Rowe Price admits that the Blue Chip Growth Fund's AUM was approximately $28.9 billion as of February 29, 2016.  T. Rowe Price states that the remaining allegations in Paragraph 202 consist of mathematical calculations that speak for themselves.

203.    T. Rowe Price admits that the Equity Income Fund's investments in securities and total assets surpassed $15 billion during the fiscal year that ended December 31, 2009, and that the Equity Income Fund's investments in securities and total assets have remained above $15 billion since December 31, 2009.

204.    T. Rowe Price admits that the Equity Income Fund's AUM was approximately $20.9 billion as of February 29, 2016.  T. Rowe Price states that the remaining allegations in Paragraph 204 consist of mathematical calculations that speak for themselves.

205.    T. Rowe Price denies the allegations of Paragraph 205.

206.    T. Rowe Price admits that the Growth Stock Fund's AUM was approximately $41.6 billion as of February 29, 2016.  T. Rowe Price states that the remaining allegations in Paragraph 206 consist of mathematical calculations that speak for themselves.

207.    T. Rowe Price denies the allegations of Paragraph 207.

208.    T. Rowe Price admits that as of the end of fiscal year 2011, the Blue Chip Fund's investments in securities, at value, were approximately $11,854,970,000, and its total assets were approximately $11,927,044,000.   T. Rowe Price admits that at the end of fiscal year 2015, the Blue Chip Fund's investments in securities, at value, were approximately $31,392,167,000, and its total assets were approximately $31,567,452,000.   The calculation of the decrease in the effective investment management fee rate is a mathematical calculation that speaks for itself.   T. Rowe Price denies the remaining allegations of Paragraph 208.

209.    The allegations in Paragraph 209 consist of mathematical calculations that speak for themselves.   T. Rowe Price denies the remaining allegations of Paragraph 209 in the form and manner alleged.

210.    T. Rowe Price admits that the Blue Chip Growth Fund paid approximately $69,851,000 in investment management fees in fiscal year 2011.   T. Rowe Price admits that the Blue Chip Growth Fund paid approximately $165,888,000 in investment management fees in fiscal year 2015.   T. Rowe Price further states that the difference between the management fees paid in 2011 and 2015 consists of a mathematical calculation that speaks for itself.   T. Rowe Price denies the remaining allegations of Paragraph 210.

211.    T. Rowe Price denies the allegations of Paragraph 211 in the form and manner alleged.

212.    T. Rowe Price admits that as of the end of fiscal year 2011, the Equity Income Fund's investments in securities, at value, were approximately $21,549,955,000 and its total assets were approximately $21,644,356,000.   T. Rowe Price admits that as of the end of fiscal year 2015, the Equity Income Fund's investments in securities, at value, were approximately $22,840,386,000 and its total assets were approximately $23,013,641,000.   T. Rowe Price states

that the calculation of the decrease in the effective investment management fee rate is a mathematical calculation that speaks for itself.  T. Rowe Price denies the remaining allegations of Paragraph 212.

213.    The allegations of Paragraph 213 consist of mathematical calculations that speak for themselves.  T. Rowe Price denies the remaining allegations of Paragraph 213 in the form and manner alleged.

214.    T. Rowe Price admits that the Equity Income Fund paid approximately $116,095,000 in investment management fees in fiscal year 2011.  T. Rowe Price admits that the Equity Income Fund paid approximately $140,603,000 in investment management fees in fiscal year 2015.  T. Rowe Price further states that the difference between the management fees paid in 2011 and 2015 consists of a mathematical calculation that speaks for itself.  T. Rowe Price denies the remaining allegations of Paragraph 214.

215.    T. Rowe Price denies the allegations of Paragraph 215 in the form and manner alleged.

216.    T. Rowe Price admits that as of the end of fiscal year 2011, the Growth Stock Fund's investments in securities, at value, were approximately $25,364,953,000 and its total assets were approximately $25,449,164,000.  T. Rowe Price admits that at the end of fiscal year 2015, the Growth Stock Fund's investments in securities, at value, were approximately $45,547,739,000 and its total assets were approximately $45,727,233,000.  T. Rowe Price states that the calculation of the decrease in the effective investment management fee rate is a mathematical calculation that speaks for itself.  T. Rowe Price denies the remaining allegations of Paragraph 216.

217.    The allegations of Paragraph 217 consist of mathematical calculations that speak for themselves.  T. Rowe Price denies the remaining allegations of Paragraph 217 in the form and manner alleged.

218.    T. Rowe Price admits that the Growth Stock Fund paid approximately $137,117,000 in investment management fees in fiscal year 2011.  T. Rowe Price admits that the Growth Stock Fund paid approximately $233,803,000 in investment management fees in fiscal year 2015.  T. Rowe Price further states that the difference between the management fees paid in 2011 and 2015 consists of a mathematical calculation that speaks for itself.  T. Rowe Price denies the remaining allegations of Paragraph 218 in the form and manner alleged.

219.    T. Rowe Price denies the allegations of Paragraph 219 in the form and manner alleged.

220.    T. Rowe Price admits that the New Income Fund individual fund fee schedule is 0.09% on assets up to $20 billion and 0.0765% on assets equal to or greater than $20 billion.  T. Rowe Price denies the remaining allegations of Paragraph 220.

221.    T. Rowe Price denies the allegations of Paragraph 221.

222.    T. Rowe Price denies the allegations of Paragraph 222.

223.    T. Rowe Price admits that as of the end of fiscal year 2011, the New Income Fund's investments in securities, at value, were approximately $15,943,946,000, and its total assets were approximately $16,110,048,000.  T. Rowe Price admits that at the end of fiscal year 2015, the New Income Fund's investments in securities, at value, were approximately $31,480,293,000, and its total assets were approximately $32,314,418,000.  T. Rowe Price further states that the calculation of the decrease in the effective investment management fee rate

is a mathematical calculation that speaks for itself.  T. Rowe Price denies the remaining allegations of Paragraph 223 in the form and manner alleged.

224.    T. Rowe Price denies the allegations of Paragraph 224 in the form and manner alleged.

225.    T. Rowe Price admits that the New Income Fund paid approximately $58,504,000 in investment management fees in fiscal year 2011.  T. Rowe Price admits that the New Income Fund paid approximately $120,420,000 in investment management fees in fiscal year 2015.  T. Rowe Price further states that the difference between the management fees paid in 2011 and 2015 consists of a mathematical calculation that speaks for itself.  T. Rowe Price denies the remaining allegations of Paragraph 225 in the form and manner alleged.

226.    T. Rowe Price denies the allegations of Paragraph 226 in the form and manner alleged.

## THE FEES DEFENDANT CHARGES TO THE FUNDS ARE NOT NEGOTIATED AT ARM'S LENGTH

227.    T. Rowe Price denies the allegations of Paragraph 227.

228.    The allegations of Paragraph 228 state legal conclusions to which no answer is required, but to the extent that one is, the Board does conduct an annual approval process of the IMAs and the fees paid thereunder by the Funds to T. Rowe Price.

229.    T. Rowe Price denies the allegations of Paragraph 229.

230.    T. Rowe Price admits that at the time the Complaint was filed, the Directors that served on the Board were sophisticated businesspersons with a wealth of professional experience and included current and former executives from international consulting firms, private equity funds, and real estate development firms, as well as higher education administrators.  T. Rowe Price states that the Directors also devote considerable time and energy to serving on the Board.

T. Rowe Price denies the remaining allegations of Paragraph 230 in the form and manner alleged.

231.   T. Rowe Price admits that the Board holds meetings during each calendar year, which can vary in number from year to year.  T. Rowe Price admits that the Board directed the operations of 187 funds, including the Funds.  T. Rowe Price denies the remaining allegations of Paragraph 231 in the form and manner alleged.

232.   T. Rowe Price denies the allegations of Paragraph 232, except T. Rowe Price admits that the Board evaluated certain information provided by T. Rowe Price, among other materials and information provided by other sources, before approving the renewal of the IMAs that were in effect at the time the Complaint was filed.

233.   T. Rowe Price denies the allegations of Paragraph 233.

234.   T. Rowe Price denies the allegations of Paragraph 234, except T. Rowe Price admits that the Board received and evaluated information regarding the fees paid by and services provided to institutional and private advised and subadvised clients of T. Rowe Price with similar investment mandates as the Fund before approving the renewal of the IMAs in effect at the time the Complaint was filed.

235.   T. Rowe Price denies the allegations of Paragraph 235.

236.   T. Rowe Price denies the allegations of Paragraph 236.

237.   T. Rowe Price admits that the Board has not solicited proposals from other advisers to provide investment management services to the Funds.  T. Rowe Price further states that the Board receives and evaluates information concerning the fees, services, and performance of other advisers each year.

238.    T. Rowe Price denies the allegations of Paragraph 238 in the form and manner alleged, except that T. Rowe Price admits that the IMAs in effect at the time the Complaint was filed did not contain "most favored nation" provisions.

239.    T. Rowe Price denies the allegations of Paragraph 239.

240.    T. Rowe Price denies the allegations of Paragraph 240.

241.    T. Rowe Price denies the allegations of Paragraph 241 in the form and manner alleged.

242.    T. Rowe Price denies the allegations of Paragraph 242 in the form and manner alleged.

243.    T. Rowe Price states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 243 and on that basis denies those allegations.

244.    T. Rowe Price states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 244 and on that basis denies those allegations.

**THE EXCESSIVE INVESTMENT MANAGEMENT FEES HARM THE FUNDS**

245.    T. Rowe Price admits that, rather than imposing separate fees and charges on shareholders, the Funds pay T. Rowe Price's advisory fees out of the Funds' net assets.  T. Rowe Price denies the remaining allegations of Paragraph 245 in the form and manner alleged.

246.    T. Rowe Price denies the allegations of Paragraph 246.

247.    T. Rowe Price denies the allegations of Paragraph 247.

## COUNT I

### ON BEHALF OF THE BLUE CHIP GROWTH FUND

### AGAINST DEFENDANT FOR VIOLATION OF SECTION 36(b)

248.    T. Rowe Price denies the allegations of Paragraph 248.

249.    T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 249.

250.    T. Rowe Price admits that it serves as the investment adviser to the Blue Chip Growth Fund pursuant to an IMA.

251.    The allegation of Paragraph 251 states a legal conclusion to which no answer is required.

252.    The allegations of Paragraph 252 state legal conclusions that do not require an answer, but to the extent that they do, T. Rowe Price denies the allegations.

253.    The allegations of Paragraph 253 state legal conclusions that do not require an answer, but to the extent that they do, T. Rowe Price denies the allegations.

254.    T. Rowe Price denies the allegations of Paragraph 254, except T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 254.

255.    T. Rowe Price denies the allegations of Paragraph 255, except T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 255.

## COUNT II

### ON BEHALF OF THE CAPITAL APPRECIATION FUND

### AGAINST DEFENDANT FOR VIOLATION OF SECTION 36(b)

256.    T. Rowe Price denies the allegations of Paragraph 256.

257.    T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 257.

258.    T. Rowe Price admits that it serves as the investment adviser to the Capital Appreciation Fund pursuant to an IMA.

259.    The allegation of Paragraph 259 states a legal conclusion to which no answer is required.

260.    The allegations of Paragraph 260 state legal conclusions that do not require an answer, but to the extent that they do, T. Rowe Price denies the allegations.

261.    The allegations of Paragraph 261 state legal conclusions that do not require an answer, but to the extent that they do, T. Rowe Price denies the allegations.

262.    T. Rowe Price denies the allegations of Paragraph 262, except T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 262.

263.    T. Rowe Price denies the allegations of Paragraph 263, except T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 263.

**COUNT III**

**ON BEHALF OF THE EQUITY INCOME FUND**

**AGAINST DEFENDANT FOR VIOLATION OF SECTION 36(b)**

264.    T. Rowe Price denies the allegations of Paragraph 264.

265.    T. Rowe Price admits that it serves as the investment adviser to the Equity Income Fund pursuant to an IMA.

266.    The allegation of Paragraph 266 states a legal conclusion to which no answer is required.

267.    The allegations of Paragraph 267 state legal conclusions that do not require an answer, but to the extent that they do, T. Rowe Price denies the allegations.

268.    The allegations of Paragraph 268 state legal conclusions that do not require an answer, but to the extent that they do, T. Rowe Price denies the allegations.

269.     T. Rowe Price denies the allegations of Paragraph 269, except T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 269.

270.     T. Rowe Price denies the allegations of Paragraph 270, except T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 270.

**COUNT IV**

**ON BEHALF OF THE GROWTH STOCK FUND**

**AGAINST DEFENDANT FOR VIOLATION OF SECTION 36(b)**

271.     T. Rowe Price denies the allegations of Paragraph 271.

272.     T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 272.

273.     T. Rowe Price admits that it serves as the investment adviser to the Growth Stock Fund pursuant to an IMA.

274.     The allegations of Paragraph 274 state a legal conclusion to which no answer is required, but to the extent that they do, T. Rowe Price denies the allegations.

275.     The allegations of Paragraph 275 state legal conclusions that do not require an answer, but to the extent that they do, T. Rowe Price denies the allegations.

276.     The allegations of Paragraph 276 state legal conclusions that do not require an answer, but to the extent that they do, T. Rowe Price denies the allegations.

277.     T. Rowe Price denies the allegations of Paragraph 277, except T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 277.

278.     T. Rowe Price denies the allegations of Paragraph 278, except T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 278.

## COUNT V

## ON BEHALF OF THE HIGH YIELD FUND

## AGAINST DEFENDANT FOR VIOLATION OF SECTION 36(b)

279.    T. Rowe Price denies the allegations of Paragraph 279.

280.    T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 280.

281.    T. Rowe Price admits that it serves as the investment adviser to the High Yield Fund pursuant to an IMA.

282.    The allegation of Paragraph 282 states a legal conclusion to which no answer is required.

283.    The allegations of Paragraph 283 state legal conclusions that do not require an answer, but to the extent that they do, T. Rowe Price denies the allegations.

284.    The allegations of Paragraph 284 state legal conclusions that do not require an answer, but to the extent that they do, T. Rowe Price denies the allegations.

285.    T. Rowe Price denies the allegations of Paragraph 285, except T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 285.

286.    T. Rowe Price denies the allegations of Paragraph 286, except T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 286.

## COUNT VI

## ON BEHALF OF THE INTERNATIONAL STOCK FUND

## AGAINST DEFENDANT FOR VIOLATION OF SECTION 36(b)

287.    T. Rowe Price denies the allegations of Paragraph 287.

288.    T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 288.

289.    T. Rowe Price admits that it serves as the investment adviser to the International Stock Fund pursuant to an IMA.

290.    The allegation of Paragraph 290 states a legal conclusion to which no answer is required.

291.    The allegations of Paragraph 291 state legal conclusions that do not require an answer, but to the extent that they do, T. Rowe Price denies the allegations.

292.    The allegations of Paragraph 292 state legal conclusions that do not require an answer, but to the extent that they do, T. Rowe Price denies the allegations.

293.    T. Rowe Price denies the allegations of Paragraph 293, except T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 293.

294.    T. Rowe Price denies the allegations of Paragraph 294, except T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 294.

## COUNT VII

### ON BEHALF OF THE NEW INCOME FUND

### AGAINST DEFENDANT FOR VIOLATION OF SECTION 36(b)

295.    T. Rowe Price denies the allegations of Paragraph 295.

296.    T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 296.

297.    T. Rowe Price admits that it serves as the investment adviser to the New Income Fund pursuant to an IMA.

298.    The allegation of Paragraph 298 states a legal conclusion to which no answer is required.

299.    The allegations of Paragraph 299 state legal conclusions that do not require an answer, but to the extent that they do, T. Rowe Price denies the allegations.

300.     The allegations of Paragraph 300 state legal conclusions that do not require an answer, but to the extent that they do, T. Rowe Price denies the allegations.

301.     T. Rowe Price denies the allegations of Paragraph 301, except T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 301.

302.     T. Rowe Price denies the allegations of Paragraph 302, except T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 302.

**COUNT VIII**

**ON BEHALF OF THE SMALL CAP FUND**

**AGAINST DEFENDANT FOR VIOLATION OF SECTION 36(b)**

303.     T. Rowe Price denies the allegations of Paragraph 303.

304.     T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 304.

305.     T. Rowe Price admits that it serves as the investment adviser to the Small Cap Fund pursuant to an IMA.

306.     The allegation of Paragraph 306 states a legal conclusion to which no answer is required.

307.     The allegations of Paragraph 307 state legal conclusions that do not require an answer, but to the extent that they do, T. Rowe Price denies the allegations.

308.     The allegations of Paragraph 308 state legal conclusions that do not require an answer, but to the extent that they do, T. Rowe Price denies the allegations.

309.     T. Rowe Price denies the allegations of Paragraph 309, except T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 309.

310.     T. Rowe Price denies the allegations of Paragraph 310, except T. Rowe Price admits that Plaintiffs purport to assert this claim for the purposes stated in Paragraph 310.

## PRAYER FOR RELIEF

The allegations in Plaintiffs' "Prayer for Relief" contain legal conclusions to which no answer is required.  To the extent a response is required, T. Rowe Price denies all allegations contained in paragraphs A through F of Plaintiffs' "Prayer for Relief."

## JURY TRIAL DEMANDED

T. Rowe Price admits that Plaintiffs purport to demand a trial by jury.

## <u>AFFIRMATIVE DEFENSES</u>

T. Rowe Price asserts the following Affirmative Defenses to the Complaint, reserving the right to timely raise such additional affirmative defenses as may be appropriate in light of the developments in this action:

## FIRST AFFIRMATIVE DEFENSE

The Complaint fails to state a claim upon which relief can be granted against T. Rowe Price.  The Complaint fails to allege particularized facts demonstrating that the advisory fees paid by the Fund to T. Rowe Price "could not have been the product of arm's length bargaining." *Jones v. Harris Assocs. L.P.*, 559 U.S. 335, 346 (2010).

## SECOND AFFIRMATIVE DEFENSE

To the extent that Plaintiffs purport to assert a claim on behalf of any share classes of the Fund other than the share classes in which they purportedly hold, Plaintiffs lack standing to assert such a claim.

## THIRD AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred in whole or in part by the applicable statute of limitations and the one-year "look-back" statutory limitation on damages included in Section 36(b) of the ICA.

## FOURTH AFFIRMATIVE DEFENSE

Plaintiffs may not obtain rescission under Section 47(b) of the ICA, 15 U.S.C. § 80a-46(b), because rescission is not available as a remedy for purported violations of Section 36(b). Furthermore, Section 47(b) provides that a contract violative of the ICA is "unenforceable by either *party*" (emphasis added), and Plaintiffs, as nonparties to the IMA, have no standing to pursue a request for relief of rescission.   Moreover, the Complaint contains none of the allegations that would be required under Fed. R. Civ. P. 23.1 and state law to assert a claim for rescission on behalf of the Funds.  Consequently, Plaintiffs' claim for rescission is barred.

## FIFTH AFFIRMATIVE DEFENSE

At the time Plaintiffs purportedly first became shareholders of the respective Funds, they were or should have been aware that an advisory fee equal to that now in effect had been approved by a majority of the Board of Directors of the Funds.  Plaintiffs were thus fully informed of all material facts concerning their investment in the Funds and knowingly entered into the investments.  Plaintiffs, by virtue of their continued purported ownership of shares in the Funds, and consequent receipt of information concerning the performance, fee schedules, and total expense ratios of the Funds over the course of time, have continued to be fully informed of all material facts pertaining to T. Rowe Price's receipt of compensation paid on behalf of the Funds for services provided to the Funds.  On this basis, Plaintiffs' claims are therefore barred, in whole or in part, by the doctrine of laches, wavier, estoppel, unclean hands, ratification, disclosure and/or consent.

## SIXTH AFFIRMATIVE DEFENSE

T. Rowe Price acted at all times and in all respects in good faith and with due care.

**SEVENTH AFFIRMATIVE DEFENSE**

Plaintiffs are not entitled to a jury trial.  *In re Evangelist*, 760 F.2d 27, 30-31 (1st Cir. 1985); *In re Gartenberg*, 636 F.2d 16, 18 (2d Cir. 1980); *Kamen v. Kemper Fin. Servs., Inc.*, 908 F.2d 1338, 1351 (7th Cir. 1990) (holding that plaintiff was not entitled to a jury trial because "the combination of a fiduciary duty with a restitutionary remedy in § 36(b) continues to put this statute on the equitable side of the constitutional line"), *rev'd on other grounds*, 500 U.S. 90, 95 n.3 (1991).


Dated: April 17, 2017

Ward B. Coe III, Federal Bar No. 00282
*wcoe@gejlaw.com*
Anatoly Smolkin, Federal Bar No. 18618
*asmolkin@gejlaw.com*
GALLAGHER EVELIUS & JONES LLP
218 North Charles Street, Suite 400
Baltimore, Maryland 21201
Tel: (410) 727-7702
Fax: (410) 468-2786

Respectfully submitted,

   /s/ Robert A. Skinner
John D. Donovan (admitted *pro hac vice*)
*john.donovan@ropesgray.com*
Robert A. Skinner (admitted *pro hac vice*)
*robert.skinner@ropesgray.com*
Amy D. Roy (admitted *pro hac vice*)
*amy.roy@ropesgray.com*
ROPES & GRAY LLP
Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199-3600
Tel.: (617) 951-7000
Fax: (617) 951-7050

*Attorneys for T. Rowe Price Associates, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 17, 2017, I caused a true and correct copy of the foregoing document to be served upon all counsel of record via the ECF system.

/s/ Robert A. Skinner
Robert A. Skinner