

# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

Chambers of
J. Mark Coulson
U.S. Magistrate Judge

101 West Lombard Street
Baltimore, Maryland 21201
MDD_JMCChambers@mdd.uscourts.gov
Phone: (410) 962-4953
Fax: (410) 962-2985

October 23, 2019

LETTER TO ALL COUNSEL OF RECORD

Re: *Zoidis et al v. T. Rowe Price Associates, Inc.*
    Civil No. 1:16-cv-02786-GLR

Dear Counsel:

In a nutshell, this case concerns allegations that T. Rowe Price overcharged for fund advisory/management services based primarily on the assertion that T. Rowe Price's fees for such services regarding its own "affiliated" funds are higher than its fees for similar services regarding unaffiliated funds known as "subadvised" funds in violation of § 39(b) of the Investment Act of 1940. Defendant counters that such a comparison is misleading because the services it provides for the respective funds are materially different.

Initially, Defendant moved for an order for phased discovery—i.e., limited discovery focusing on the nature of the two groups of funds and the respective services T. Rowe Price provides for each. Defendant's main argument in support was that if the subadvised funds (and the services provided) were found to be invalid comparators, additional discovery regarding such matters as costs, economies of scale and profitability might be avoided. Plaintiffs opposed the order, arguing that such phasing ultimately would not be more efficient because a comparison of services provided between the two groups of funds was only one factor to be considered in determining whether a § 36(b) violation occurred. By his order of April 27, 2017, Judge Garbis[1] of this Court directed that "Phase One" discovery be limited as urged by Defendant, leaving open the issue of whether additional phases would be necessary once Phase One was completed. (ECF No. 94).

Plaintiffs twice moved for reconsideration of this phased approach, relying on *Kennis v. Metropolitan West Asset Mgmt., LLC*, No. CV-15-8162 (C.D. Cal.), a similar action

---

[1] After Judge Garbis' retirement, this case was reassigned to Judge Russell on August 15, 2018.

where that court ultimately denied summary judgment after an identical phased approach had been tried, noting that consideration of a Section 39(b) violation required consideration of all relevant factors. (ECF Nos. 99 and 113). These were both opposed by Defendant. (ECF Nos. 100 and 114). This Court denied both requests. (ECF Nos. 101 and 115).

Somewhat surprisingly, in March of 2019, the parties presented a joint stipulation to "dephase" discovery, stating that they now mutually agreed that this was "most efficient and most cost effective for the parties and the Court." (ECF No. 130 at p. 2). The Court approved the stipulation and the parties' request to extend the scheduling order deadlines. (ECF No. 131).

On October 8, 2019, Defendant filed correspondence indicating that a discovery dispute had arisen concerning Electronically Stored Information ("ESI"). (ECF No. 137). Plaintiffs filed a timely response. (ECF No. 138). Defendant also filed a reply. (ECF NO. 139). The parties are to be commended in working through many of their differences without the need for Court intervention. However, two main areas of disagreement remain.

First, Plaintiffs seek discovery regarding additional subadvised funds not originally identified in their Complaint but nonetheless described as pursuing investment strategies similar to the sponsored funds, as well as new subadvised funds that have retained Defendant while this case has been pending (collectively, the "New and Additional Subadvised Funds"). After discussions between the parties, Plaintiffs have narrowed the documents they seek to (1) Defendant's investment management agreements with these funds; and (2) all documents Defendant provided to the funds in response to any request for proposal ("RFP") or request for information ("RFI") involving the funds.[2] (ECF No. 138 at pp. 5-6). Defendant agreed to produce the investment management agreements but not the RFP/RFI documents because they are substantially the same as documents those already produced with regard to other subadvised funds and they are not centrally located, requiring increased ESI identification and collection efforts (in addition, of course, to additional review and production). (ECF No. 137 at p. 5).

With regard to the contested Category 2 concerning RFP/RFI documents, Plaintiffs argue that such documents will demonstrate whether Defendant's services for those funds are a result of an arms-length bargaining process, a process that would be unique to each fund. Plaintiffs also contest Defendant's assertion that the documents are substantially the same as others already produced. Plaintiffs further argue that Defendant has not sufficiently substantiated its claim of burden.

---

[2] Defendant has also agreed to provide a report reflecting Defendant's reporting for each of those funds. (ECF No. 139 at p. 2, n.2).

In resisting this discovery, Defendant has not argued that the Category 2 documents are irrelevant, but does argue that their relevance is marginal at best since these documents represent its initial "pitch," not the actual agreed-to terms of its ultimate service agreement with the funds (which Defendant, by way of compromise, has agreed to produce). Additionally, Defendant argues that they are duplicative of documents already produced for other funds, and generally argues that their location makes collection burdensome. Further, in its reply, Defendant provides additional support for its claim of burden by outlining the effort—and low ultimate yield—involved when it undertook to produce exemplar RFI/RFP responses.

The Court agrees that the relevance is marginal. Though one might argue that if the final agreed-to terms are substantially different from the terms as initially "pitched," an arms-length process took place, one could certainly make similar arguments in comparing investment management agreements to each other. That is, significant differences in price for the same services would also reflect an arms-length process. Additionally, the Court would expect there to be significant overlap of "pitch" documents as Defendant has argued. Finally, the Court is satisfied that the burden outlined (and relatively low yield) weighs against production, especially given Defendant's reasonable compromise to provide the Category 1 documents.

Accordingly, the Court will not order the production of Category 2 documents.

The second area of dispute concerns Plaintiffs' request for additional discovery concerning Defendant's Board's process for review and approval of fees charged beyond what was produced prior to de-phasing. To this end, Plaintiff has proposed revised search criteria for ten Board members custodians, eight of which have already been identified by Defendant as likely possessing responsive information. Defendant has offered to use Plaintiffs' proposed search criteria[3] to search three of those ten, arguing that those three were most involved in the process and would be expected to have the most relevant and responsive information, leaving seven custodians in dispute. Defendant argues that the majority of responsive information that might be in the possession of other custodians likely either originated with or was received by the three key custodians it identifies.

The Court has no reason to dispute Defendant's assertion that its three proposed custodians are likely the most "target rich" in terms of responsive information. However,

---

[3] Defendant explains that it originally proposed the search criteria in an effort to reach compromise in this dispute, offering broader searches in exchange for fewer custodians. Defendant reserved its right to challenge those criteria should the Court order an expansion beyond the three custodians proposed by Defendant.

having previously identified—after de-phasing--five additional custodians as likely to have responsive information,[4] Defendant has not offered enough specifics to justify withholding information it has already acknowledged is relevant. Defendant's argument, in part, is that some of the information sought could have (and should have) been sought in Phase One. Importantly however, when presenting their joint stipulation to de-phase discovery, the parties did not represent that Phase One had been completed (not to be revisited), but rather that phasing was no longer deemed efficient or cost effective. Therefore, the Court cannot accept what amounts to a "waiver" argument as sufficient justification to foreclose additional discovery, especially where five of the disputed custodians were identified as possessing responsive information *after* de-phasing occurred. Finally, Defendant has not sufficiently supported its claim that the information sought would be largely duplicative of information in the possession of the three key custodians it proposes.

Accordingly, the Court will at this point order production from two of the five additional custodians discussed above who had previously been identified by Defendant as possessing responsive information, using the same search criteria proposed for Defendant's three identified key custodians. These two will be chosen by Plaintiffs. If production yields significant overlap with documents produced from Defendant's three key custodians, no further production will be ordered. If, however, production demonstrates unique documents central to the case, the Court will consider ordering additional production of the remaining three (of the five) disputed custodians. (The Court will not order production from the remaining two disputed custodians not otherwise previously identified by Defendant as likely possessing relevant information.)

Plaintiff has also requested an amendment to the scheduling order. In light of the additional discovery outlined above, the parties should confer regarding any necessary adjustments to the schedule and attempt to agree on a joint proposal for the Court's consideration.

Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket it as such.

                                Sincerely yours,
                                /s/
                                J. Mark Coulson
                                United States Magistrate Judge

cc:    The Honorable George Levi Russell, III

---

[4] Defendant does not concede that the remaining two custodians disputed are likely to have responsive information.